UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KADEN DRUE JENNER,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | No. 2:25-cv-01056-TLN-SCR<br><br><u>FINDINGS AND RECOMMENDATIONS</u> |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401-34 (the "Act"), and supplemental security income ("SSI") under Title XVI, 42 U.S.C. §§ 1381-1383f. For the reasons that follow, the undersigned recommends that Plaintiff's motion for summary judgment (ECF No. 10) be GRANTED, that the Commissioner's cross-motion for summary judgment (ECF No. 14) be DENIED, and that judgment be entered in favor of Plaintiff remanding this matter to the Commissioner for further proceedings consistent with this decision.

**I. PROCEDURAL BACKGROUND**

Plaintiff applied for DIB on May 26, 2023, and for SSI on June 11, 2024, alleging

disability beginning on February 20, 2017. Administrative Record ("AR") 159-221.[1] Plaintiff's applications were denied initially and on reconsideration. Plaintiff requested a hearing and a hearing was held before administrative law judge ("ALJ") Vincent Misenti on November 25, 2024. AR 37-57. On December 19, 2024, the ALJ issued an unfavorable decision, finding Plaintiff was not under a disability from February 20, 2017 through the date of the decision. AR 31. On February 27, 2025, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-3.

Plaintiff filed this action on April 9, 2025. ECF No. 1. The parties filed cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner. ECF Nos. 10 & 14. Plaintiff filed a reply brief. ECF No. 15.

## II. FACTUAL BACKGROUND

Plaintiff was born in April 1978, and was 38 years old at the alleged onset date. AR 159. At the time of the hearing in November 2024, Plaintiff was 46 years old, and he testified he had not worked since 2017. AR 40-41. Plaintiff testified that the main problems limiting him from working were anxiety and depression. AR 41. At the time of the hearing, Plaintiff was not taking medication but was seeing a counselor every three or four weeks for his mental health issues, and was also seeing his doctor for the same. AR 42.

Plaintiff was asked at the hearing if he was 46 years old, and responded, "I think so." AR 40. Plaintiff testified he had problems "like knowing what to say or do" and that it was hard to "remember stuff" and to interact with people. AR 41-42. Plaintiff also mentioned sleeping problems. AR 42. Plaintiff testified he did not have friends and would "sometimes" talk to family. AR 43. Plaintiff also testified to a "repetitive stress injury" concerning tendonitis in his wrist, which oddly led the ALJ to tell Plaintiff: "That's a physical problem. Stress is mental." AR 44.

Plaintiff stated that on a typical day he would "wake up and decide if I should get up or try to sleep some more." AR 44-45. He testified, "I don't eat a lot of the times." AR 45. He doesn't

[1] The AR is electronically filed at ECF No. 9. When referencing the AR, page references are to the number in the lower right corner of the page, not the CM/ECF generated header. References to briefs are to the page number generated on the CM/ECF header.

cook, but makes simple meals such as "cereal, crackers, bread" and "maybe" applesauce and yogurt. AR 45. Plaintiff stated he sometimes goes out to the library or grocery store, but he does not go to restaurants, malls, movie theaters, churches, and he stated, "I don't get out often." AR 46. When Plaintiff answered "no" to going out, the ALJ stated: "No? I don't understand you. Yes, or no." AR 46. Plaintiff then repeated "no," other than shopping, library, or to get mail. AR 46.

When Plaintiff was examined by his counsel at the hearing, counsel stated: "There's a real long break between the question and answers, or a long one at least." AR 47. Plaintiff said that was due to him "[n]ot knowing what to say." AR 48. Counsel later appeared frustrated with Plaintiff's ability to answer questions, commenting: "So again, you've got about three answers there. First of all I don't want you to guess…." (AR 49); "Let me—let's try it again because—so do you have trouble like communicating with people in your home or with the doctors, things like that?" (AR 50); and "Do you have trouble being specific in your answers?" (AR 52). At the conclusion of the hearing, Plaintiff's counsel commented to the ALJ: "You know, I don't think I've had anybody have such a hard time just answering questions that is not intellectually challenged. And I think this is just the nature of the anxiety/depression."[2] AR 56.

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive[.]'" *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

[2] This appears inconsistent with the ALJ's evaluation that "[t]he claimant attended the hearing and answered questions appropriately, there was no evidence of apparent difficulties understanding and attending to the content of the hearing." AR 22.

*Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Desrosiers v. Secretary of HHS*, 846 F.2d 573, 576 (9th Cir. 1988); *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Commissioner*, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**IV. RELEVANT LAW**

Social Security benefits are available for eligible individuals who are "disabled." 42 U.S.C. § 1381a. An individual is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b); 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

*Id.*, §§ 404.1520(a)(4)(ii), (c); 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

*Id.,* §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make her capable of performing her past work? If so, the claimant is not disabled. If not, proceed to step five.

*Id.*, §§ 404.1520(a)(4)(iv), (e), (f); 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Id.*, §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you have to prove to us that you are blind or disabled"); *Bowen*, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." *Hill v. Astrue,* 698 F.3d 1153, 1161 (9th Cir. 2012); *Bowen*, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. [Step 1] The claimant has not engaged in substantial gainful activity ("SGA") since February 20, 2017, the alleged onset date (AR 19).
>
> 2. [Step 2] The claimant has the following severe impairments: irritable bowel syndrome, right shoulder tendinitis, anxiety, depression (AR 20).
>
> 3. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (AR 21).
>
> 4. [Preparation for Step 4] After careful consideration of the entire record, "the [ALJ] finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can lift, carry, push or pull up to 20 pounds occasionally, 10 pounds frequently. He can sit six hours, stand six hours, and walk six hours in an eight-hour workday. He is able to follow simple tasks with occasional public interaction." AR 23.
>
> 5. [Step 4] The claimant has no past relevant work (AR 30).
>
> 6. [Step 5] The claimant was born in 1978 and was 38 years old, which is defined as a younger individual on the alleged onset date. (AR 30).
>
> 7. [Step 5, continued] The claimant has a high school education (AR 30).
>
> 8. [Step 5, continued] Transferability of job skills is not at issue because the claimant does not have past relevant work. (AR 31).
>
> 9. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (AR 31).
>
> 10. The claimant was not been under a disability, as defined in the Social Security Act, at any time from February 20, 2017, the alleged onset date, through the date of the decision. (AR 31).

## VI. ANALYSIS

Plaintiff's opening brief presents three points of alleged error: 1) the ALJ gave insufficient reasons for discounting Plaintiff's subjective symptom testimony; 2) the ALJ improperly evaluated whether Plaintiff met Listing 5.08, which concerns digestive disorders; and 3) the ALJ improperly evaluated the opinion of Dr. Wenstrup. ECF No. 10 at 8.

Defendant argues that Plaintiff does not cite evidence in the record showing that he met the requirements for Listing 5.08. ECF No. 14 at 9. Defendant argues Plaintiff has not shown weight loss was experienced due to a digestive disorder, nor that he followed treatment for his irritable bowel syndrome ("IBS"). *Id*. Defendant argues that the ALJ appropriately considered the symptoms of Plaintiff's physical and mental impairments and gave reasons for discounting Plaintiff's allegations. And finally, Defendant contends that the ALJ reasonably found Dr. Wenstrup's opinion unpersuasive.

Plaintiff's reply brief addresses only Listing 5.08. ECF No. 15. Plaintiff argues for medical equivalence and that the ALJ should have found that the combined effect of IBS and anorexia nervosa met Listing 5.08. *Id*. at 3. However, Plaintiff cites no case law where a court has found that anorexia nervosa meets Listing 5.08.

**A. <u>Listing 5.08</u>**

Plaintiff argues that the ALJ failed to evaluate whether Plaintiff met Listing 5.08 for experiencing weight loss due to a digestive disorder, despite continuing treatment as prescribed, and having a body mass index ("BMI") of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive six-month period. ECF No. 10 at 16. Plaintiff contends that he suffered from irritable bowel syndrome ("IBS") and that his BMI was consistently below 17.50. *Id*. at 17-18. Plaintiff also argues that his condition of being underweight was caused by a psychiatric condition, anorexia nervosa. *Id*. at 19. Plaintiff contends the ALJ should have considered his anorexia nervosa and whether it medically equaled Listing 5.08.

Defendant argues that Plaintiff "cites no medical evidence establishing that he has experienced weight loss due to a digestive disorder." ECF No. 14 at 7. Defendant also argues that Plaintiff has not shown compliance with medical treatment for IBS. Defendant further contends that the ALJ was not required to consider medical equivalency because Plaintiff did not raise it. *Id*. at 7-8.

The ALJ did not specifically address Listing 5.08. The ALJ's entire discussion of the Listings concerning digestive disorders is: "The claimant's irritable bowel disease fails to satisfy the criteria of Section 5.0 of the Listing of Impairments, including 5.06, inflammatory bowel

disease." AR 22. Defendant is correct that Plaintiff did not raise the issue at the administrative hearing. There was no mention of digestive disorders, irritable bowel syndrome, Listing 5.08, or anorexia nervosa at the hearing. AR 37-57. Instead, Plaintiff testified he was unable to work due to anxiety and depression. AR 41-42. The issue was also not specifically raised in the post-hearing letter brief (AR 323-24), which is a boilerplate list of issues, without any articulation to the specific issues in Plaintiff's case. The post-hearing letter brief states that the ALJ did not "fully review" Step 3 and instead applied a "mechanical and/or insufficient analysis." AR 324. The letter brief did request remand for consideration of equivalency at Step 3, but did not make a specific argument about Listing 5.08. AR 324.

The ALJ did not err in not considering *sua sponte* whether Plaintiff medically equaled Listing 5.08. *See Ford v. Saul*, 950 F.3d 1141, 1147 (9th Cir. 2020) (An ALJ "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.") (citation omitted); *Crummett v. Kijakazi*, No. 2:22-cv-00593-JDP, 2023 WL 6387157, at *3 (E.D. Cal. Sept. 29, 2023) ("Plaintiff's failure to raise this issue [of listing equivalency] at the administrative level also forecloses her from properly raising it now.").

Additionally, Plaintiff offers no case finding that this digestive disorders listing can be met by reference to the psychiatric disorder of anorexia nervosa, and the cases that have addressed it are to the contrary. *See McKalb v. Kijakazi*, No. 21-cv-01348-EJY, 2022 WL 1658820, *5(D. Nev. May 25, 2022) ("Defendant cites to case law finding that anorexia nervosa, and eating disorders generally, do not fall within Listing 5.08."); *Nuno v. Comm'r of Soc. Sec.*, No. 22-cv-01553-CDB, 2026 WL 1179730, *13 (E.D. Cal. April 30, 2026) ("Plaintiff's references to anorexia do not tend to demonstrate a digestive disorder but, rather, a mental disorder, pursuant to the plain language of Listing 5.08."); *Renee Jean v. Saul*, No. 18-cv-385-FVS, 2020 WL 1318791, *10-11 (E.D. Wa. Mar. 20, 2020) (rejecting argument that anorexia nervosa medically equals Listing 5.08 and noting Plaintiff had presented "no authority demonstrating how listing 5.08 for digestive disorders is closely related to anorexia nervosa).

Plaintiff has not demonstrated error in the ALJ's step three finding. However, the ALJ

presented no articulation of how he evaluated Listing 5.06, and did not consider medical equivalency to 5.08 (likely because the issue was not presented by counsel). Because the Court recommends remanding on other grounds, as discussed below, on remand the ALJ should reconsider whether Plaintiff's impairments meet Listing 5.06 or 5.08. *See Nuno*, 2026 WL 1179730 at * 14 (remanding for reconsideration of whether Plaintiff's impairments meet or equal Listing 5.08).

**B. <u>Subjective Symptom Testimony</u>**

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for discounting his subjective symptom allegations. ECF No. 10 at 8. Plaintiff contends the ALJ minimized symptoms, such as "persistent chest pain and heart palpitations" and categorized treatment as "routine." *Id.* at 8-9. Plaintiff also states the ALJ minimized his right eye condition and "minimized or misrepresented" his "severely low body weight." *Id*. at 10. Notably, none of these issues were discussed at the administrative hearing. Although Plaintiff was asked his height and weight at the time of the hearing, there was no testimony about digestive disorders or being severely underweight. Neither the ALJ nor counsel elicited any testimony from Plaintiff about eye issues, or heart problems.

Plaintiff also argues the ALJ minimized his mental symptom allegations and improperly discounted them because Plaintiff did not take medication. ECF No. 10 at 13. Plaintiff states he was not noncompliant with prescribed medications; rather, he was hesitant to start treatment, and that such reluctance should not be used against him. *Id*. at 14. Finally, Plaintiff argues that the ALJ focused on the more benign or stable findings, while ignoring others. *Id*. at 14-15.

As to physical symptoms, Defendant argues that the ALJ did not ignore evidence in the record of sporadic complaints of chest pain. ECF 14 at 9. Defendant points out that Plaintiff did not assert cardiac impairment in his application (AR 252) or mention it at the hearing or in his function report. *Id.* The ALJ found Plaintiff's right eye condition to be non-severe, and Defendant argues that Plaintiff does not challenge the step two finding. *Id*. at 10. Defendant contends the ALJ adequately considered Plaintiff's low weight and that the record did not contain a definitive diagnosis for it. *Id*. at 11.

As to Plaintiff's mental symptoms, Defendant contends that the ALJ acknowledged them but found his treatment was not commensurate with a disabling mental impairment. *Id.* at 13. Further, Defendant contends the ALJ correctly found Plaintiff's activities of daily living ("ADLs") were inconsistent with disabling mental limitations. *Id*. Defendant argues that the record reflects Plaintiff largely refused treatment and there is no indication that his refusal stemmed from his mental impairments. *Id*.

Evaluating the credibility of a plaintiff's subjective testimony is a two-step process: First the ALJ must "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted). Objective medical evidence of the pain or fatigue itself is not required. *Id.* (internal citations omitted).

Second, if the ALJ does not find evidence of malingering, the ALJ may only reject the claimant's testimony by offering "specific, clear and convincing reasons for doing so." *Id.* (internal citations omitted). While an ALJ's credibility finding must be properly supported and sufficiently specific to ensure a reviewing court the ALJ did not "arbitrarily discredit" a claimant's subjective statements, an ALJ is also not "required to believe every allegation" of disability. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). In weighing a claimant's credibility, an ALJ may consider, among other things, inconsistencies either in the claimant's testimony or between her testimony and her conduct, claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Id.* at 959. "Ultimately, the 'clear and convincing' standard requires an ALJ to show his work . . . . The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to

convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). The clear and convincing standard is "not an easy requirement to meet" and the "most demanding requirement in Social Security cases." *Garrison*, 759 F.3d at 1015 (9th Cir. 2014) (citation omitted).

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision." AR 24. As to his physical impairments, the ALJ found Plaintiff "received relatively routine treatment." AR 27. The ALJ noted that as to mental symptoms Plaintiff "has received ongoing treatment since his alleged onset date, with no psychiatric hospitalizations" and that he generally presents with normal mood and affect and full orientation. AR 29. The ALJ noted the Plaintiff does not take prescription medications for his mental problems. AR 29. The ALJ referenced several times Plaintiff's ADL's – particularly that he can drive, read, and use a computer.

Plaintiff argues that the ALJ "significantly understated" and "minimized" the findings in the medical evidence, and then reached general conclusions such as treatment being "routine." ECF No. 10 at 8-9. Plaintiff further argues that the ALJ "failed to account for the chronic and serious nature" of his severely low body mass index. *Id.* at 10. In regard to Plaintiff's mental health, Plaintiff argues that the ALJ improperly faulted him for not taking prescription medication. *Id*. at 13.

Defendant contends the ALJ "validly considered Plaintiff's treatment—or rather, lack thereof—in assessing his mental functioning." ECF No. 14 at 14. Second, Defendant argues that the ALJ appropriately resolved conflicts in the medical evidence. *Id*. at 14-15. Defendant also argues "that the ALJ appropriately considered that Plaintiff performed activities of daily living inconsistent with a disabling mental condition, such as driving, going to the library, reading, using a computer, and shopping." *Id.* at 15.

The Court concludes that the ALJ has not provided clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. In evaluating the objective medical evidence, the ALJ appears to have minimized certain findings and overemphasized others. "While ALJs obviously must rely on examples to show why they do not believe that a claimant is

credible, the data points they choose must *in fact* constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard." *Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014).

The ALJ appears to have discounted Plaintiff's mental health symptoms because he did not take prescription medication. A claimant's treatment history is a valid consideration in evaluating subjective symptom testimony. *See* 20 C.F.R. 404.1529(c)(3); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). However, the Ninth Circuit has also cautioned that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996), citing *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989). Pursuant to Social Security Ruling 16-3p, an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." Social Security Ruling ("SSR") 16-3p at *8-*9 (March 16, 2016), *available at* 2016 WL 1119029. Additionally, if a claimant's testimony is discounted for not taking medication, the ALJ should consider the reason provided for not taking medication. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("Where a claimant provides evidence of a good reason for not taking medication for her symptoms, her symptom testimony cannot be rejected for not doing so."). Here, the ALJ did not discuss why Plaintiff was not taking medication for his mental health. Plaintiff's medical record reflects that he was "hesitant" to start medication because "he had a side effect of an antidepressant that needed treatment in the ER." AR 925. On remand, the ALJ should consider why Plaintiff was not taking medication for his anxiety and depression.

The ALJ also discounted Plaintiff's subjective symptom system testimony as inconsistent with his ADLs. Although it was appropriate for the ALJ to consider Plaintiff's ADLs, a claimant need not be "utterly incapacitated" in order to be disabled. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking

for exercise, does not in any way detract from her credibility as to her overall disability." *Id*. at 1050. The ALJ seemed to emphasize that Plaintiff could drive, use a computer, and read. The fact that Plaintiff can drive appears nine times in the decision. AR 20-30. The ALJ's decision and Defendant's brief also mention that Plaintiff can go to the library.

Plaintiff testified at the hearing that he drives about once a week. AR 41. Plaintiff's function report indicates that he goes to stores and the library to use the restroom, the internet, and look at books. AR 260-62. Plaintiff also reported, "I have rarely done computer graphics or video games for several years" and that several years ago he "often watched TV." AR 266. The ALJ relies extensively on one doctor's note from March 2019, where Plaintiff presented for flank pain and the doctor wrote "does not work, on computer most of the day." AR 419. The ALJ did not inquire about Plaintiff's computer usage at the hearing. The Court does not find this one stray comment in the medical record from five years prior to the administrative hearing to be a clear and convincing reason for discounting Plaintiff's testimony. Additionally, other medical records from around that time (Feb. 2018) indicated that using a computer exacerbated Plaintiff's reported repetitive stress injury and that he experienced tingling in his hand. AR 432.

Additionally, the ALJ did not specify in what ways Plaintiff's ADLs such as driving, reading, using a computer, and going to the library undermine his subjective symptom allegations. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted). Plaintiff testified to difficulties interacting with people, remembering, and knowing what to say. Dr. Wenstrup's opinion, discussed further in the next section, included that Plaintiff's ability to maintain concentration was impaired by anxiety, even brief social interactions were difficult, and Plaintiff was "easily flustered" trying to carry out simple instructions. AR 866. Driving, reading, and using the internet at the library are all generally solitary activities and do not present the demands of a workplace environment. *See Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) ("many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.").

The Court concludes that the ALJ has not presented specific, clear, and convincing reasons for discounting Plaintiff's subjective symptom testimony.

**C. <u>Evaluation of Dr. Wenstrup's Opinion</u>**

The ALJ discussed the history of treatment with Dr. Wenstrup, beginning with a new patient visit in October 2020. AR 25. The ALJ discussed several appointments that Plaintiff had with Wenstrup in 2023 and 2024. AR 26-28. The ALJ then found Wenstrup's medical source statement "not persuasive." AR 30. The ALJ found there was "no indication the doctor [Dr. Wenstrup] ever performed a detailed mental health assessment." AR 30. The ALJ then described the portions of the opinion he found inconsistent with other aspects of the record. The ALJ stated:

> Despite the doctor's findings of inability to remember simple instructions, the claimant has been noted to be alert and oriented in all spheres, with normal judgment, and he is able to use a computer, drive, and read, activities which require focus. While he notes that the claimant finds it difficult to cope with activities such as appointments, the longitudinal treatment evidence confirms that he does in fact attend appointments on a regular basis for routine follow up and monitoring, such as for his eyes, and this is not consistent with the doctor's statement.

AR 30.

Plaintiff contends the ALJ's reasoning is incorrect because Plaintiff received mental health treatment from Wenstrup and other providers at Stanislaus Health Service from 2014 to 2024. ECF No. 10 at 24. Plaintiff also argues that his ADLs were not inconsistent with Wenstrup's opinion. *Id*. at 25. Plaintiff argues this error was not harmless because the hypothetical to the VE did not contain the limitations found by Wenstrup. *Id*. at 26.

Defendant argues that the ALJ reasonably evaluated the opinion of Wenstrup and contends that Wenstrup was not providing Plaintiff with mental health care, but rather encouraged him to seek counseling elsewhere. ECF No. 14 at 17. Defendant argues that the ALJ's assessment of Plaitiff's ADLs was correct and that "Plaintiff could go out on his own, and he had no difficulties attending appointments." *Id.* at 18.

Evaluation of medical opinions is governed by the regulations that became effective in 2017, which changed the framework for evaluation of medical opinion evidence. Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01

(Jan. 18, 2017); 20 C.F.R. § 404.1520c. Those regulations provide that the ALJ will no longer "give any specific evidentiary weight ... to any medical opinion(s)" but instead must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources and evaluate their persuasiveness. Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b); *see also* *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022) ("For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence.").

The factors for evaluating the persuasiveness of a physician opinion include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The new regulatory framework eliminates the "treating physician rule" and displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). Still, in rejecting any medical opinion as unsupported or inconsistent, an ALJ must provide an explanation supported by substantial evidence. *Id.* In sum, the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. §§ 404.1520c(b),

404.1520(b)(2)).

As to supportability, the ALJ discounted Dr. Wenstrup's opinion because "[a]side from documenting the claimant's subjective statements and administering very brief depression and anxiety inventories, which are based on the claimant's answers to a series of questions, there is no indication the doctor ever performed a detailed mental health assessment." AR 30. While the two-page medical source statement does not reflect findings from a mental health assessment, Dr. Wenstrup had been seeing Plaintiff for approximately four years. Plaintiff had seen Wenstrup several times in 2023 and 2024 and discussed his ongoing problems with anxiety and depression. Those notes reported impressions such as "[w]orse functioning despite counseling" (AR 890); holter monitor prescribed for chest palpitations and told to "avoid stressors" (AR 895-96); "more anxious than previous" and weight at 96.5 pounds (AR 898, 901). Plaintiff also presented at times on physical exam as "anxious" and with "restricted affect." *See, e.g.,* AR 928 & 934. The ALJ's assessment of the supportability of Wenstrup's opinion is not supported by substantial evidence.

The ALJ's consistency analysis is also problematic. The ALJ found Wenstrup's opinion that the claimant finds it difficult to cope with activities such as appointments (AR 866) inconsistent with the fact that Plaintiff does in fact attend appointments on a regular basis. AR 30. Discrediting a doctor's opinion based on a patient's ability to attend medical appointments is unconvincing. A patient can have difficulty coping with brief social interactions and experience anxiety, and still manage to attend necessary medical appointments. *See Hernandez-Devereaux v. Astrue,* 614 F.Supp.2d 1125, 1147 (D. Or. 2009) ("Whether a plaintiff can attend medical appointments has little bearing on whether she is able to maintain an eight-to-dive workday, five days a week."); *Jacquelyn B. v. Comm'r of Soc. Sec*., No. C21-1126-TLF, 2022 WL 986286, *4 (W.D. Wa. April 1, 2022) ("The ability to attend medical appointments on a less frequent basis than a full-time job also does not equate to maintaining a regular workplace attendance."); *Kala S. v. Berryhill*, No. 18-cv-00934-YY, 2019 WL 4015884, *4 (D. Or. Aug. 16, 2019) ("[U]sing plaintiff's ability to attend medical appointments as a basis for discounting her testimony would be problematic given that a claimant's *failure* to attend medical appointments is a proper basis for

discounting testimony."). Dr. Wenstrup's opinion is not inconsistent with Plaintiff's ability to appear at medical appointments.

Finally, the ALJ also found Dr Wenstrup's opinion that Plaintiff struggled to remember simple instructions was inconsistent with findings that Plaintiff could use a computer, drive, and read. AR 30. For the reasons discussed *supra*, the Court does not find that Plaintiff's ADLs undermine Wenstrup's opinion. As Plaintiff correctly argues, this error in considering Wenstrup's opinion was not harmless because the hypothetical to the vocational expert did not include all of limitations espoused by Wenstrup.

## VII. CONCLUSION

Plaintiff requests an immediate award of benefits, or alternatively remand for further administrative proceedings. ECF No. 10 at 27; ECF No. 15 at 4. No argument is provided as to why an immediate award of benefits would be appropriate, and the Court concludes it is not. *See Garrison*, 759 F.3d at 1019 ("Courts have generally exercised this power [to remand for an award of benefits] when it is clear from the record that a claimant is entitled to benefits[.]"). In contrast, if the record creates "serious doubt" as to whether a claimant is disabled, remand for further proceedings is appropriate. *Id*. at 1021.

Further administrative proceedings are appropriate for the ALJ to address the issues set forth herein concerning subjective symptom testimony and Dr. Wenstrup's opinion. Moreover, the ALJ should consider whether Plaintiff meets Listings 5.06 and 5.08.

Accordingly, **IT IS HEREBY RECOMMENDED** that**:**

1. Plaintiff's motion for summary judgment (ECF No. 10) be GRANTED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 14) be DENIED.
3. The Clerk be directed to enter Judgment for Plaintiff remanding this action to the Commissioner for further proceedings consistent with this decision.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within fourteen (14) days** after being served with these findings and recommendations, Plaintiff may file written objections with the court. Such document should be captioned "Objections to Magistrate Judge's

Findings and Recommendations." Local Rule 304(d). Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 14, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE